The first case today is 14-1132, Caqueria Tres Monjitas v. Indulac, Inc. Mr. Santiago, good morning. Good morning, Your Honors. My name is Rafael Santiago and I represent Industria Lechera de Puerto Rico, who I will be referring to as Indulac. If it pleases the Court, Your Honors, I would like to reserve three minutes of my allotted time in order to do some pre-voting. You may. Thank you, sir. Your Honor, if it pleases the Court, seeking to end ten years of what was admittedly protracted litigation, the District Court, by Mr. Daniel Dominguez, approved a final stipulation amongst the parties, which was called the Final Settlement Agreement, a memorandum of understanding between the parties. That settlement agreement was entered strictly by and among the plaintiffs and the defendants. That is, on one side, Caqueria Tres Monjitas, Suiza Deity, as plaintiffs, as defendants then, the government defendants, namely, ORIL, which is the Spanish acronym for the Milk Regulatory Office, and the Secretary of Agriculture. In that stipulation, Your Honors, Indulac was never made a party. Indulac never partook of its negotiations, nor was it made privy of the same until it was executed and presented for filing before open court. Having said that, Your Honor, also the Puerto Rico daily farmers never also were a party, participated in the negotiations, nor they were made privy of the contents of that stipulation until after it was filed in open court. As a matter of fact, Your Honors, BTM, Caqueria Tres Monjitas, the Secretary of Agriculture, and even the Administrator ORIL were made privy to the document the day before it was executed and filed. And it is also worth mentioning that the acting Administrator of ORIL at the time, a gentleman by the name of Pantojas, as a result of the proposal of entering into a settlement agreement, resigned to his position as Administrator inasmuch he wasn't, he didn't agree with the terms and conditions of the same. Even the Secretary of Agriculture, who signed the document as acting interim Administrator of ORIL, stated publicly that she only signed the document because she was advised by her attorney to do so without further evaluation of the impact of the document. All right? And the question then is back before this Court. Evidently, it shouldn't be a surprise why we're here. Well, it is somewhat of a surprise. You might start telling me why the statute of limitations hasn't run you. The statute of limitations, Your Honor? Yeah. Because the statute of limitations starts running from the date, from the date the agreement was entered into. And the agreement was entered on November 2013. Please remember that the injuring factor we are alleging and that we respectfully and humbly submit this jurisdiction to this Court and standing, Article III standing, comes up from damages associated with the entering of the settlement agreement I just mentioned. And frankly, we've been trying to correct the wrongs associated with that settlement agreement, but Judge Dominguez lightly dispensed of our objections to that settlement agreement by basically saying that we didn't have standing. And if you look at standing... What's the time period for filing the notice of appeal under Rule 58? Fifty-three, I'm sorry. If I may, may I grab a document from you? Absolutely. Your Honors, if you look at the issue related to the jurisdiction of this Court, admittedly, our motion to alter or amend judgment under Rule 59E admittedly was filed late. The problem is that the judgment issued by Judge Dominguez was not set out in a separate document as required under Rule 58A and Rule 58C. If you look at those two rules jointly, I'm sure you know that inasmuch it is required that this type of judgment be set out in a separate document, the term for us to file the notice of appeal did not start elapsing until 150 days after the entry of the judgment. Well, Counsel, this document, I'm looking at a document that is clearly labeled amended order and judgment. It's unmistakably a judgment. It, again, refers to, in the final paragraph, it refers to itself as an order and judgment. And there's really no, with the possible exception of one paragraph, there's really no legal reasoning in this document. It basically serves the purpose of incorporating the settlement agreement into this judgment. So unless one takes what may be characterized as an unduly formal view of this separate document requirement, why doesn't this serve as a separate document setting forth the judgment in this case? I mean, how could there be any mistaking what the purpose that is served by this document? The case law, Your Honor, it is described or listed in our brief, but the Supreme Court has stated that this rule has to be applied mechanically. And if we are to apply the rule mechanically, Your Honor, either it is the separate document or it is the judgment. But it cannot be both. And that is what I respectfully submit. That document, which incorporates by reference the terms and conditions associated with the settlement agreement, it has to be the judgment. It is the document pursuant to which the case is disposed of. Okay? So it follows, then, that a separate document was required under 58A or 58C, and that that judgment wasn't being entered until 150 days were elapsed from the date of entry in the docket. And that's what has been stipulated by the case of interloper marketing and sales practices litigation. This is not my interpretation, Your Honor. This is an interpretation made, I believe, by you in that particular case, together with Supreme Court Justice Sauter and Judge Lynch. So, again, I know it's short. I know it is not the typical opinion and judgment in the sense that it doesn't include determinations of fact and determinations of law. But definitely if we are to, I mean, follow the precedent of the Supreme Court, we need to apply the rule mechanically. And if we apply the rule mechanically, the document cannot be both. It can only be either the judgment or the separate document. And in most instances, under any of the two assumptions, evidently the rule wasn't followed nor applied mechanically. All right. Well, since I raised the subject, I would suggest we go to another one. Unless you have other questions on that issue. What about the law of the case? The law of the case, Your Honor. That is very, very, very specific. And I need to be very respectful. I say this very respectfully and I say it very humbly. The decision in the case of the dairy farmers is wrong. It's bad law. But in any event, assuming it is good law, it cannot be the law of the case because there were different parties involved. Was there a hearing? Excuse me? Wasn't there a hearing? There was a hearing on a motion, on a motion and non-evidentiary hearing on a motion submitted by the Puerto Rico dairy farmers, which is an association, which is a completely different party to this case. Did your client appear? My client? We were there, Your Honor. We were out. Did you appear? Were you given an opportunity to present evidence and to speak? At that particular junction, Your Honor, we were not given the opportunity to present any evidence. As a matter of fact, Excuse me, I don't think that was the question. It was understood that it was not an evidentiary hearing, but weren't you given an opportunity to participate in the fairness hearing? The allegation or what I submit, Your Honor, and that's why I say the law of the case doesn't apply, is that as a matter of right, inasmuch we do have more than a colorable claim, okay, there is an exception and exceptional circumstances do exist that give us a right to that evidentiary hearing. If you look, Your Honor, Counsel, what we're trying to figure out is when the dairy farmers were pressing their claim, isn't it true that you were given an opportunity to be heard or you could have requested an opportunity to be heard because you were granted intervener status? When the judgment was issued, okay, the day immediately after, we filed a motion requesting the court to allow us an opportunity to fully brief them as to the damages associated with the implementation of the settlement agreement, okay? The court denied our petition, and not only that, the court approved the settlement judgment. After the judgment was issued, then the Puerto Rico dairy farmers moved for the stay of that judgment, and the fairness hearing that you're referring to, if I'm correct, and as to an ex post facto argumentative hearing where only Suiza and the Puerto Rico dairy farmers debated as to the merits of the stay petition filed by the Puerto Rico dairy farms. At that time, Your Honor, and it is the truth, I'm an officer of this court, I can only represent to you the truth, we assumed a, what you might call, a position that wasn't very aggressive because we were receiving, we were receiving a benefit of a decrease in our cost of raw milk for the manufacturing of UAC milk. It was only upon review of our experts, upon review of the new regulation 12 that is included as an exhibit to the settlement agreement that we found out that the damages that we are about to suffer severely outweigh. It sounds to me like you took a tactical decision to keep quiet. No, no, it wasn't, Your Honor. Because at that time you thought you were favored by it. But in any event, Your Honor, in any event, the filing by the Puerto Rico dairy farmers of a stay petition did not preclude, at least procedurally, not substantively, me moving for the alteration and or the amending of the judgment, nor even did it preclude, as you instructed us when we filed the petition, the stay petition before this honorable court, to go back before Judge Dominguez in order for him to stay the effects of his judgment. As a matter of fact, as I informed this court last week, we filed an informative motion letting you know that Judge Dominguez indeed granted us an evidentiary hearing and it is scheduled for December the 12th. So in a sense, the remedy that we prayed for in the alternative has been granted by the district court, and this I have to acknowledge before you evidently, and that's why we informed it to you. But having said that, Your Honor, I think, Your Honors, I believe this court has before it sufficient data, sufficient evidence on the record of two clearly undisputed facts. One, that we were stripped of what was called a service charge, acknowledging our condition as a balancing plant, and therefore our inherent inefficiencies as such. And second, of our potential liability of having to pay 78.5 cents per quart of raw milk, testing for the manufacturing of drinkable milk products. Those two facts, which are the direct and undisputed result of the settlement agreement, have never been denied in any of the briefs presented by the other parties to this litigation. Suiza hasn't denied that. You're using up your time now. Excuse me? Yes. I'll talk later. Thank you. Mr. Escalera, good morning. Good morning, Your Honors. May it please the Court, Rafael Escalera on behalf of Suiza Deiri. This case is obviously barred by the rule of the case doctrine. The decision that was rendered by this panel, by this Court on April, disposes of the main issues here, whether the district court abused its discretion in approving the settlement, and whether the interveners were granted a right to participate in the hearing and file their objections. The truth of the matter is that the judgment was entered. It was immediately stated, 14 days elapsed, all the parties filed numerous motions. All those motions were before the Court in a hearing. The intervener does not have a right to an evidentiary hearing. PRDFA and Indulak, the processing plant that the farmers control, both were there. Neither of them requested a hearing. And all those findings are in the opinions of this Court. The real reason that Indulak is here is because although it had the same duty since 2007, the preliminary injunction that was issued in this case, and the most important facts, I know that the Court is familiar with them, but are summarized in the opinion rendered at that point in 2009 by Josh Torroya. Those things have not substantially changed. The only change that has occurred, unfortunately, since 2007 is an increasing margin for the processors. The same increase that Indulak received upon approval of the judgment. They were supposed to pay 90 cents, and we were supposed to pay 90 cents. We were paying 90 cents. They were not. That price was reduced to 78.5. How can they complain? Simply because they are not paying and have never paid the same price for their UHD. So those issues were resolved by this case, by this Court, in very clear language. The Court said it is true that the District Court entered the agreement on November 7th without first hearing PRDFA's objections. But it is also true that the Court immediately stayed its order in light of the objections and gave PRDFA and Indulak ample opportunity to review the agreement to be heard. Those are the words of this Court in April. The Court goes on to say that the hearing and the consideration of several motions filed in the meantime by PRDFA and Indulak was adequate. Furthermore, the Court held that PRDFA did not have a right to an evidentiary hearing, and they had not requested one. Finally, the Court found that there is no abuse of discretion. It is exactly the same judgment. It is exactly the same facts. Now, there is the rule of the case, the doctrine, which is very clear. It binds the decision by a branch of this Court, binds a successful appellate panel in a second appeal in the same case, unless certain circumstances justify reconsideration. None of those circumstances are present here because they are exceptional. Excuse me. They identify two issues peculiar to them that were not addressed by that prior case. There's a definitional issue and the cancellation of some compensation that they would be getting. How do you respond to that claim that those are two discrete issues not covered by that decision? I will go to both issues, Your Honor. First, the definition. In 2008, after a year of living under the injunction that was never obeyed by Oriel, that was never obeyed by Indulak, Oriel finally came with the first regulation of the milk market in Puerto Rico. That regulation contained a definition of fluid milk. If you look at the definition of the judgment, it is identical, only one difference. It says, for examples of what fluid milk is, go to the federal definition of fluid milk, which is universally accepted. Indulak, that's the first reason why that argument doesn't work. The second reason is that all drinkable milk fabricated by Indulak is UHT. The injunction says you cannot get raw milk for UHT, and we're talking about drinkable milk. You cannot get UHT milk from raw milk at a lower price. Flavored milk, lactose-free milk, all the milks that are enumerated in the brief are UHT drinkable milk, and those are included in the examples of fluid milk in the federal regulation, but certainly they were covered by the injunction because they are UHT, and they were certainly the undisputable drinkable milk from the beginning. The second argument that they make is that they lost certain benefits, so to speak. Well, the main loser of those benefits is the fund for the promotion of the milk industry, what we call the field for the Spanish acronym. But in any case, they haven't advanced the argument that there is a federal right, property right, or any other right to those benefits. It's part of the regulation, and the regulation could have changed as it did, and it changed by way of a settlement. That is something that the government can do and normally does in civil right cases. That doesn't go to the conclusion that there was no abuse of discretion in approving the judgment and to the conclusion that they were afforded an opportunity to be heard. Fourteen days elapsed. We ended up in a hearing. They participated in the hearing. They filed the motions. They were heard. And the farmers are basically raising the same issues in the case that is still alive, and the farmers are those that, as Judge Torroya recognized in his prior opinion in 2009,  this is their second shot at the same issue. Just for my benefit, opposing counsel referred to a proceeding that is taking place that is relevant to what we're talking about. Would you just describe that for me again, please? That is a proceeding pursuant to which the district court is faced with a petition by Indulak to stay the part of the injunction that requires them to pay 78.5 cents per quart of raw milk to fabricate UHT. The question is, how come a party that was supposed to be paying 90 and that gets 11.5 cents additional margin, the same benefit that we're getting, opposes a reduction in price? The answer is simple. If you're not obeying the injunction and you have never paid for raw milk for fluid milk processing, which is what UHT is, and the injunction refers to UHT by its name, it's not a confusion of whether UHT is fluid milk or not. It obviously is. But certainly the injunction refers to UHT. If you have never paid the regulated price, because through a lot of maneuvers through the regulatory authority that is still heavily influenced by the farmers, to use that phrase, if you're not paying 78.5 cents, what you're doing is two things. You're depressing the price that the farmer should be receiving. You are competing with a farmer's control processor with us because we fabricate the same products, competitive products as fresh milk. And furthermore, you are stopping the entrance of cheaper UHT milk from mainland United States with the subsidy that we give to the revenue requirement of the farmer. So how does that additional, that proceeding that's been scheduled, how does that relate to the relief that is being requested here? I thought I understood opposing counsel say that that actually addresses the alternative relief that they were seeking with respect to an evidentiary hearing. Is that your understanding? Well, my understanding is that it is the same relief, Your Honor. They're requesting the district court to release them from the obligation to pay the same, which is an obligation that they have from the injunction that was affirmed by this court and certainly denied by the U.S. Supreme Court. So seven years later, they're still trying not to pay the same price for the fabrication of the fluid milk that competes with us and the fluid milk that is used to stop the importation of mainland U.S. UHT. There's no importation of fresh milk into Puerto Rico for obvious reasons, but there is a big importation of UHT. And the farmers want us to subsidize the price that you receive by paying a high price. They can pay a lower price for UHT, compete with us, and stop importations. That is exactly, but exactly the same situation we had in the injunction and the situation we had not resolved at this point. And that is something that this court must keep in mind. Federal orders are supposed to be obeyed. We've had a great deal of problems, which are reflected in what gave rise to this decision, this settlement. The only way that we could bring the government to settlement conversation was with an order issued after years of litigation and more than 110 evidentiary hearings for contempt of the officers of the government. And the reason for contempt was simple. They never obeyed any of the district court orders. Faced with contempt, they reached a determination. Recently, we reached a second agreement also when they were facing contempt. But still, Indulac, through the control of the regulatory apparatus, wishes to pay less for its milk so it can compete with us by having us subsidize the farmer with a higher price. And at the same time, stop the importation of UHT milk, which is fabricated in the United States with milk, which is much, much cheaper, between $0.36 and $0.40 a quart, than you can obtain it in Puerto Rico. All those activities are not only against the injunction, the judgment, and the decisions of this court. They are also against the Commerce Clause and against the upholding of the Supremacy Clause of the U.S. Constitution. That is, your honors, what I, unless there are questions. I thought you might want to comment on the separate document issue. I know that was, I think, raised for the first time in that supplemental briefing. I don't think you've had a chance to comment on that. I'd be interested in your position on that. This is our position, your honor. We do believe that it is very clear, as you said, that this was the judgment that had to be appealed. There is no question about it. I think also that this, it is very clear that all the parties since the beginning, the government, the PRDFA, Indulag in this case, everybody took that as a judgment. Everybody waived any argument regarding the independent judgment rule. At the same time, my position is... Is that waivable, though? Is that a jurisdictional issue? No, it is resolved, it is decided, your honor, that you can waive the requirement of an independent judgment. What you cannot waive is the period to file the appeal. But it is decided by this court and by the Supreme Court that you can waive the requirement for a separate independent judgment. The question is, what is the consequence of that waiver? In my opinion, your honor, if you waive the independent judgment requirement since you cannot waive the period, then that waiver triggers the period. But in all honesty, I must also say that that reading of the rule that I have just exposed is not the most, is not the automatic result of a fair reading of the cases of this circuit. So, and I say this because the cases of this circuit have consistently held that the independent judgment rule has to be used to uphold jurisdiction, not to defeat it. And that is the problem that I have in the analysis I have made. And I must be very, very honest with this court. You would have to revisit those cases if this analysis, that I think is sound, is going to be followed. But it's not the analysis that would automatically follow from your own presence. Just very quickly, what would be the evidence of indelict waiver of this separate document? I mean, usually a waiver is an affirmative relinquishment of a right. It doesn't follow necessarily from inaction or inattention. So what's the waiver here? Well, Judge Lippis, I think the cases of this, the court and the Supreme Court also, recognize the possibility of a nonaffirmative waiver, a waiver by conduct. And in this case, they filed certainly within the period, but they failed to file the motion for reconsideration against the real judgment. So they were not confused about the term. They were simply confused about what was the judgment that triggered the necessity to file the motion for reconsideration. Since they did it late, that motion did not stay the period, and they came anyway to the court believing that that was the judgment to be appealed. That is the waiver. The problem is, what is the consequence? As I said, I think that triggers the period, which is not waivable. But also, as I said, that is not the most fair reading of your own cases. Thank you.  Carlos. If you wait a second, please. Thank you. Judge Lippis, addressing the question you made to Brother Counsel regarding the definitional issue, I'm reading from Regulation 12, the one that is attached as an exhibit to the settlement agreement, and it specifically states, fluid milk refers to the milk that the processing plants receive and retain for its homogenization and pasteurization or ultra-pasteurization or homogenization processing or septic processing. Examples of fluid milk are fresh milk and UHT milk. But different from what Counsel said, the fluid milk products to be included are those listed in the Code of Regulations. And the problem here is that prior to the adoption of this settlement agreement, the now present Regulation 12 defines fluid milk as only UHT milk, UHT milk, and fresh milk. And it begs the question, if what Counsel just said holds water, why they felt to include the reference to CFR was necessary in this definition of fluid milk. And the answer is very simple, Your Honor, because the CFR definition is much more ample, much more longer list than just strictly UHT and fresh. That is why, Your Honor, my client is suffering not only an injury in fact, but also is under the threat of suffering irreparable harm, because if the settlement agreement is implemented or the judgment is implemented, I should say, that I'm paying 78.5 cents across the board for all of my milk, notwithstanding a scientific rationale and a threat of due process wasn't followed in the adoption of that particular regulation. Having said that, Your Honor, with respect to the right to an evidentiary hearing, admittedly, the case law does not provide, as I stated in my earlier comments, does not provide for an unconditional right to an evidentiary hearing. But when we respectfully and very humbly submit, Your Honor, that such an unconditional right indeed exists when there is a specific or particular claim of an injury. Because otherwise, Your Honor, otherwise, the action by the government, meaning of the district court, of approving the settlement agreement constitutes by itself a taking. It doesn't make any sense, and the general rule, I understand it. It doesn't make any sense to provide an automatic evidentiary hearing, because the intervenor may or may not have an injury as a result of the entering of the settlement agreement. But in this case, the intervenor is specifically, specifically alleging, and Suiza has just basically accepted that we've been stripped of the service charge and that now we have to pay 78.5 cents per quart of raw milk. What about this hearing that you will be getting before the district court? The suggestion is that it's tantamount to the evidentiary hearing that you're requesting here. And, Your Honor, the problem here is, you know what it is? That the preliminary injunction became permanent as a result of the settlement agreement. That's the problem here. And that's why he's saying that I need to pay 78.5 cents, because the ruling as to 78.5 cents or 90 cents was the object of a preliminary injunction order, okay? And that preliminary injunction order, I don't know what happened with it. Well, one thing we know is you didn't comply with it. No. The problem is that we did comply, Your Honor. Well, you didn't pay the 78. Yes, we're paying 78, and we have been paying 78. The only issue, the only issue when, like, a court of counsel, I need to be forthcoming with the court, at a time when Indulak was almost bankrupt, was almost bankrupt, as a result of having to pay 90 cents per quart, we started deferring some of the payment with respect to some of that milk, but that happened in 2012. All that milk got paid at 90 cents. Judge Dominguez held content hearings, and no adverse consequence was imposed upon Indulak. So the conclusion as to that, as to whether it was imposed, has to be that we were in breach of the preliminary injunction, or Judge Dominguez, in his sound decision-making, after hearing lengthy arguments from some brother counsel at Escalera, decided that we weren't in contempt of the court. I mean, I guess, Your Honors, and this is to finalize my intervention, here we have a problem, and the problem is that Suiza extended, and BPM for that matter, extended the preliminary injunction into the settlement agreement. And as a result of the entering of the settlement agreement, the preliminary injunction became permanent. And I never got the opportunity. I never got the opportunity, I have to emphasize on that, I never got the opportunity to present evidence, to disclaim the factual determination made by the district court at the preliminary injunction. All right. We'll read the record. Thank you. Thank you, sir.